UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CRAIG L. LANG,

          Petitioner,                CIVIL ACTION NO. 04 CV 40094 FL

          v.                        DISTRICT JUDGE PAUL V. GADOLA

DAVID JAMROG, Warden,           MAGISTRATE JUDGE VIRGINIA M. MORGAN

          Respondent.

_____/

## REPORT AND RECOMMENDATION

### I. Introduction

Petitioner Craig Lang was convicted by a jury in the Circuit Court for the County of Kalamazoo, State of Michigan, on three counts of delivery of a controlled substance (marijuana) to a minor and one count of criminal sexual conduct in the fourth degree. The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished per curiam opinion. People v. Lang, 2002 WL 31297609 (Mich.App. October, 11 2002). The Michigan Supreme Court denied Petitioner's application for leave to appeal. People v. Lang, 468 Mich. 877, 659 N.W.2d 235 (Mich. March 31, 2003) (Table, No. 122630). Petitioner is currently incarcerated in Parr Highway Correctional Facility in Adrian, Michigan. Pursuant to 28 U.S.C. § 2254, Petitioner now seeks, *pro se*, a writ of habeas corpus. The district court referred the matter to this court for Report and Recommendation. For the reasons stated below, the court recommends that Petitioner's application for a writ of habeas corpus be denied.

-1-

## II.  Factual Background

In July of 1998, Petitioner lived with thirteen-year old Ashley Tucker, her mother, Anita Gumbinner, and her mother's boyfriend, Charles Boyd.  (Trial Transcripts (TT) Vol. II, pp. 215, 282)  Tucker's close friend at the time, thirteen-year old Shelly Goff, spent several weeks living with Tucker during July and August of 1998.  (TT Vol. II, P. 215-16)  On August 31, 1998, police were called to the home of Tucker, Gumbinner, and Boyd to investigate a possible assault and battery involving Petitioner, Boyd, and Gumbinner.  (TT Vol. II, pp. 343-344)  Goff was present when the police arrived, and she told Sheriff Deputy Lawrence Czarnowski of an incident unrelated to the assault.

Goff told the deputy that earlier that summer, while she was sitting on Petitioner's lap, he had rubbed his hand over the vagina area of her pants.  (TT Vol. II, pp. 342, 346)  Deputy Czarnowski turned the investigation over to Detective Sergeant Nicholas Regas.  Detective Regas took a verbal and written statement from Goff in September 1998, in which she alleged that Petitioner not merely rubbed her but had penetrated her vagina with his index finger.  (TT Vol. II, pp. 221, 348-49)

On the day the charged incident occurred, according to Goff's testimony, she was sitting on Petitioner's lap in a chair in the living room and Ashley Tucker was lounging on the chair in a position facing Goff.  (TT Vol. II, p. 222-24)  Petitioner asked Goff, "[C]ould I feel you to see how wet you are [?]"  (TT Vol. II, p. 227)  Goff got up, went to the kitchen and then returned to sit back down on Petitioner's lap next to Tucker.  (TT Vol. II, p. 227)  Goff testified that Petitioner penetrated her vagina with his index finger as deep as the length of his nail and said,

-2-

"'You're wet.'"  (TT Vol. II, p. 228)  She reacted by softly uttering "ouch" and running into

Tucker's bedroom.  (TT Vol. II, p. 229)  Tucker corroborated Goff's story, stating that Petitioner

touched "Shelly's [Goff's] leg up by her vagina area and Shelly [Goff] jumped up."  (TT Vol. II,

pp. 288-89)  Charles Boyd, watching television on the couch in the same room at the time of the

incident, testified that he remembered Goff and Petitioner sitting on the chair behind him and

Goff running out of the room.  (TT Vol. II, p. 324)  He did not recall Tucker being in the room.

(TT Vol. II, p. 325)  He did recall Petitioner telling him later that summer, "Shelly Goff had a

wet, hairy vagina and that he stuck his finger in it."  (TT Vol. II, p. 326)

The prosecutor also claimed that during the same summer, Petitioner offered marijuana

to Goff, Tucker and their friend, twelve-year old Nicole Mulder, while the three girls were in

Tucker's bedroom. This incident was first reported to police in November, 1998, over two

months into the investigation of the penetration incident.  (TT Vol. II, p. 356)  Goff, Tucker, and

Mulder all testified that during July or August of 1998 they were in Tucker's bedroom together

and Petitioner threw a marijuana joint into the room, through a hole in Tucker's door, and said

something akin to "Here you go, girls."  (TT Vol. II, pp. 240, 290-91, 336-37)

As noted above, the jury found Petitioner guilty of three counts of delivery of a

controlled substance to a minor[1] and one count of criminal sexual conduct of the fourth degree.

Petitioner now seeks a writ of habeas corpus pursuant to §2254 on the following grounds:

> I. Petitioner's due process rights were violated where, despite the trial court's
> ruling and the prosecutor's promise to admonish witnesses, one of the

─────────────────────

[1]One count for each of the three minor complainants who allegedly received the marijuana.

-3-

complainants testified to another uncharged act involving marijuana, which was
unfairly prejudicial

II. The trial court violated Petitioner's due process rights by admitting evidence of
other alleged uncharged sex acts involving one of the complainants where the
Prosecutor did not provide timely notice to defense trial counsel.

III. Defense trial counsel was constitutionally ineffective in failing to lay a proper
foundation to admit a prior inconsistent statement by one of the complainants,
resulting in exclusion of highly exculpatory evidence that the complainant
admitted lying about the charged sex act, and the complainants were going to get
Petitioner in trouble.

### III.  Standard of Review

This petition was filed after April 24, 1996.  Therefore, the standard of review is

determined by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  28

U.S.C. § 2254.  AEDPA mandates that a writ of habeas corpus will not be granted with respect

to any claim that was adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States, or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" federal law when "state court arrives at a

conclusion opposite to that reached by the Supreme Court on a question of law or on

indistinguishable facts."  Maldonado v. Wilson, 416 F.3d 470, 475 (2005) (citing Williams v.

Taylor, 529 U.S. 362, 412-13, 120 S.Ct. 1495 (2000)).  Alternatively, a state court decision is an

unreasonable application of federal law "when the state court correctly identified the applicable

-4-

legal principle from Supreme Court precedent, but applied that principle to the facts before it in

an unreasonable manner." <u>Id.</u>  The state courts' findings of fact are given a higher measure of

deference.  They are "presumed to be correct" unless rebutted "by clear and convincing

evidence."  28 U.S.C. § 2254(e)(1).  Rulings on ineffective assistance of counsel claims involve

mixed questions of law and fact, and are not given the same presumption of correctness as

findings of fact.  <u>See</u> <u>Hence v. Smith</u>, 37 F.Supp.2d 970, 983 (E.D. Mich. Feb 10, 1999).

## IV.  Petitioner's Claims

### (A) Testimony by Complainant of Petitioner's Previous, Uncharged Marijuana Delivery.

Following the prosecutor's opening statement, Petitioner objected to the introduction of

evidence regarding uncharged acts of delivery of marijuana to the complainants.  The trial court

sustained Petitioner's objection, ruling that evidence of previous uncharged acts of marijuana

delivery were not part of *res gestae* of the charged delivery and could not be introduced.  (TT

Vol. II, p. 207)  Petitioner declined a curative instruction, but the trial court did instruct the

prosecutor to advise the witnesses they were not to testify about the uncharged incidents of

marijuana delivery.  (TT Vol. II, p. 208)  In fact, the prosecutor was given time to admonish

witnesses.  (TT Vol. II, p. 208)  However, in the following exchange with the prosecutor, Shelly

Goff, one of the minor complainants, inadvertently testified about an uncharged incident of

marijuana delivery:

> Q:    All right. What happened?
>
> A:    Ashley [Tucker] and I were sleeping and Frankie [Petitioner] came into the
>        bedroom to ask us if we wanted to smoke some marijuana—

MS. INNES [PETITIONER'S COUNSEL]:  I'm going to object, your Honor, based on a prior objection that was sustained by the Court.

THE COURT:          Mr. Russell?

MR. RUSSELL:       Your Honor, pursuant to the Court's earlier order, I did as the Court directed.

THE COURT:          Members of the jury, you will disregard any reference to the smoking of marijuana or the comment that was made concerning smoking marijuana.

That is – the objection is sustained and stricken from the record.

MS. INNES:  Thank you, your Honor.

(TT Vol. II, p. 235-236)

On direct appeal, Petitioner contended this exchange, despite the cautionary instruction, invited the jury to convict based on propensity, violating the due process guarantee of a fundamentally fair trial. The Michigan Court of Appeals rejected this argument:

> The trial court sustained the objection and instructed the jury to disregard the comment.  Defense counsel did not request any further curative action, and in fact thanked the court.  Under these circumstances, we cannot conclude that the witness' volunteered and unresponsive answer deprived defendant of a fair trial.  *People v. Kelsey,* 303 Mich. 715, 717; 7 NW2d 120 (1942); *People v. Williams,* 114 Mich.App 186, 198-199; 318 NW2d 671 (1982).

People v. Lang, 2002 WL 31297609 at *1. Petitioner contends that the Court of Appeals' adjudication was contrary to or an unreasonable application of Petitioner's Fourteenth Amendment rights. This court finds Petitioner's argument without merit.

Petitioner cites two federal cases to support his assertion: Lisbena v. California, 314 U.S. 219, 62 S.Ct. 280 (1941); and United States v. Ailstock, 546 F.2d. 1285 (6th Cir. 1976).  This

-6-

court finds these cases do not establish rules relevant to the evaluation of his claim. In <u>Lisbena</u>,

the Supreme Court defines the requirements of due process generally:

> As applied to a criminal trial, denial of due process is the failure to
> observe that fundamental fairness essential to the very concept of
> justice. In order to declare a denial of it we must find that the
> absence of that fairness fatally infected the trial; the acts
> complained of must be of such quality as necessarily prevents a
> fair trial.

314 U.S. at 236, 62 S.Ct. 280. However, the facts of the case were quite different to the case at

bar. In <u>Lisbena</u>, the prisoner in that case alleged his trial was fundamentally unfair because the

confession admitted at trial was physically and psychologically coerced, while here Petitioner

claims testimony of prior uncharged acts is fundamentally unfair. <u>See</u> 314 U.S. 219, 62 S.Ct.

280. On the other hand, in <u>Ailstock</u> the court ruled testimony of prior uncharged acts violated

the prisoner's due process. However, in <u>Ailstock</u>, "[i]nadmissible testimony of a prior

conviction was received by the jury without any cautionary instruction, either immediately or in

the general charge, having been given" and the Sixth Circuit held "the failure of the Court to

issue a cautionary instruction, either immediately or in the general charge, constituted prejudicial

error." 546 F.2d. at 1291. At Petitioner's trial, as the Court of Appeals noted cautionary

instruction was given immediately after Goff's statement of prior acts. When cautionary

instructions are given, federal courts have actually established the principle that courts must

presume that juries follow their instructions. <u>Washington v. Hofbauer,</u> 228 F.3d 689, 706 (6th

Cir. 2000); <u>Hill v. Mitchell</u> 400 F.3d 308, 325 (6th Cir. 2005). The Supreme Court has ruled that

when inadmissible evidence is inadvertently presented, courts are "normally [to] presume that a

jury will follow an instruction to disregard" such evidence. <u>Greer v. Miller</u>, 483 U.S. 756, 766,

107 S.Ct. 3102, 3109 n. 8 (1987); see also U.S. v. Ursery, 109 F.3d 1129, 1133 (6th Cir. 1997)

("[E]ven if the evidence was erroneously admitted, the striking of the evidence with instructions

to the jury to disregard it will ordinarily cure the error.").  This presumption is overcome in only

if:

> [T]here is an 'overwhelming probability' that the jury will be
> unable to follow the court's instructions, *Richardson v. Marsh,* 481
> U.S. 200, 208, 107 S.Ct., 1702, ___, 95 L.Ed.2d 176 (1987), and a
> strong likelihood that the effect of the evidence would be
> 'devastating' to the defendant, *Bruton v. United States,* 391 U.S.
> 123, 136, 88 S.Ct. 1620, 1628, 20 L.Ed.2d 476 (1968).

Greer, at 766, 107 S.Ct. 3102.  The presumption that a jury adheres to instruction does not

represent a feeling of certainty of the presumption's verity as much as "it represents a reasonable

practical accommodation of the interests…in the criminal justice process."  Richardson v.

Marsh, 481 U.S. 200, 211, 107 S.Ct., 1702 (1987).

It is in this vein of practicality that Petitioner's claim of fundamental unfairness must be

denied.  Petitioner contends that there were "serious problems" with the credibility of the

complainants and by implication the stricken statement, and not their testimony, was what led to

his conviction.  Petition for Writ of Habeas Corpus, p. 21.  It is true that the only evidence

presented to prove the marijuana charge was the testimony of Goff and two other teenage

complainants.  It is also true that Goff's credibility was potentially weakened by evidence of her

delay in reporting the incident, her admittance of frequent marijuana use, her mother's belief that

she was untruthful, and other inconsistencies.  However, Petitioner's argument requires the court

to accept that the jury chose to believe Goff's stricken statement and be swayed by it, while

simultaneously doubting Goff's claim that the charged incident actually occurred.  Additionally,

Goff's stricken statement was brief, quickly stricken with cautionary instruction, and not repeated. Under these circumstances, the testimony struck was not so severe as to be "devastating" to the defendant nor was it too influential for the jury to ignore.

The inadmissible evidence inadvertently presented was so slight, if Petitioner's claim were accepted, virtually every stricken statement would be grounds for a mistrial or reversal. The curative procedural device of striking with cautionary instruction would be rendered useless and judges would rule jurors' verdicts tainted by any slip of the tongue. Trusting juries to follow the court's instructions allows the criminal justice system to function. Thus, it is reasonable to presume that the stricken testimony did not affect the jury's verdict. The ruling of Michigan Court of Appeals aligns with the federal precedent in this area of law. Therefore, the Court of Appeals' ruling was not contrary to nor an unreasonable application of federal law, the test under AEDPA is not met, and Petitioner's first claim is rejected.

### (B) Testimony by Complainant of Petitioner's Previous, Uncharged Sexual Acts.

After opening arguments, Petitioner objected to the prosecutor's desire to elicit testimony of Petitioner's prior uncharged sexual remarks and conduct toward Goff leading up to the alleged penetration. (TT Vol. II, pp. 201-2) Petitioner claimed that the testimony constituted an unfair surprise. (TT Vol. II, p. 202) Petitioner argued that there was no discussion of this testimony at the preliminary examination, and if counsel had known of the evidence, she would have attempted to move to go beyond the rape-shield and to change the course of defense. (TT Vol. II, p. 202) The trial court overruled the objection, reasoning that the testimony was part of

the *res gestae* of the penetration; therefore, no notice was required.  (TT Vol. II, p. 209)  The

objection was noted by the court and reserved for appellate review.  (TT Vol. II, p. 212)

As a consequence of the objection being overruled, Goff was permitted to testify about

two previous events involving Petitioner that occurred during the summer of 1998 before the

penetration incident.  In the first incident, Petitioner "busted into" Tucker's bedroom, while she

was undressing.  (TT Vol. II, p. 232)  Goff jumped into the closet and tried to cover herself with

a sheet, and Petitioner tried "to force the sheet off of [her]" and "feel" her.  (TT Vol. II, p. 232)

In another incident, Goff testified that Petitioner entered Tucker's bedroom, woke up Goff and

Tucker, got on top of Goff, went "back and forth like he was having sex [with Goff]" and said he

got "a woody."  (TT Vol. II, p. 236-37)  Goff also testified that Petitioner touched her breast

while she was in the shower, but the testimony was stricken by the trial court because it occurred

after the charged incident.  (TT Vol. II, p. 234)

In Petitioner's direct appeal to Michigan Court of Appeals, he argued that the trial court

erred in allowing this testimony because it violated his due process right to be protected from

unfair surprise as articulated in Wardius v. Oregon, 412 U.S. 470, 93 S.Ct. 2208 (1973).

Petitioner also claimed the admission after completion of voir dire was contrary to or an

unreasonable application of Morgan v. Illinois, 504 U.S. 719, 112 S.Ct. 2222 (1992), because it

prevented his "counsel from asking probing questions about how jurors might react to learning

about other acts evidence, and whether the jurors would improperly convict [Petitioner] based on

propensity[.]"  Petition for Writ of Habeas Corpus, p. 41.  The Court of Appeals rejected

Petitioner's claim stating:

-10-

> Defendant next argues that the trial court abused its discretion by allowing the admission of evidence of defendant's sexual statements to the complainant, who resided in the same home with defendant. Defendant acknowledges that the evidence was generally admissible, see *People v. DerMartzex,* 390 Mich. 410, 413-414; 213 N.W.2d 97 (1973), but contends that the untimely admission of the evidence unfairly prejudiced the defense. We disagree. The statements at issue preceded the charged conduct and were documented in the police reports and preliminary examination transcript of the case. Thus, the evidence should not have surprised defense counsel, [FN3] and we find that the probative value of the evidence outweighed any potential prejudice to defendant.
>
> FN3. Defendant's claim that he would have handled voir dire in a different manner had he been aware of this evidence was not raised as an objection at trial to admission of the evidence.

People v. Lang, 2002 WL 31297609 at *1. Petitioner resubmits the same due process claim here and contends the AEDPA test for granting habeas relief is met. This court finds Petitioner's claim without merit.

As the Court of Appeals noted, Petitioner concedes that this testimony is generally admissible. Petitioner only contends that the admission was untimely, constituting an unfair surprise. However, Petitioner fails to show a federal law "clearly established" by the U.S Supreme Court that supports his claim. Therefore his claim is denied summarily.

The Supreme Court ruled in Brecht v. Abrahamson that "[g]eneral improprieties occurring in state proceedings are cognizable only if they created a fundamental unfairness that violated the petitioner's Fourteenth Amendment right to due process." 507 U.S. 619, 623, 629-30, 113 S.Ct. 1710 (1993). As noted in Gray v. Netherland, 518 U.S. 152, 167-168, 116 S.Ct.

-11-

2074 (1996), failure to give notice to defendant of prosecution's evidence does not offend any

such principles:

> A defendant's right to notice of the charges against which he must
> defend is well established.  In re Ruffalo, 390 U.S. 544, 88 S.Ct.
> 1222, 20 L.Ed.2d 117 (1968); Cole v. Arkansas, 333 U.S. 196, 68
> S.Ct. 514, 92 L.Ed. 644 (1948).  But a defendant's claim that he
> has a right to notice of the evidence that the state plans to use to
> prove the charges stands on quite a different footing.  We have
> said that 'the Due Process Clause has little to say regarding the
> amount of discovery which the parties must be afforded.'  Wardius
> v. Oregon, 412 U.S. 470, 474, 93 S.Ct. 2208, 2212, 37 L.Ed.2d 82
> (1973).

The federal cases Petitioner cites in his petition (Wardius, 412 U.S. 470, 93 S.Ct. 2208; Morgan

504 U.S. 719; United States v. Blount, 479 F.2d 650 (6th Cir., 1973)) do not establish nor imply

that evidence presented at trial without notice violated his right to due process.  Wardius is

quoted above for representing a holding contradictory to Petitioner's claim.  412 U.S. 470, 93

S.Ct. 2208.  Morgan, 504 U.S. 719 and Blount, 479 F.2d 650, only establish that courts may not

refuse to ask prospective jurors certain questions during voir dire.  These cases do not establish a

rule that may apply to cases similar to Petitioner's where prisoner's claim an untimely surprise

affected counsel's ability to adequately perform voir dire.  See Morgan, 504 U.S. 719; Blount,

479 F.2d 650.  As a result, Petitioner has not proven that failure to give notice in a timely

manner is a violation of any "clearly established" federal law as determined by the Supreme

Court.  Therefore, Petitioner's second claim is denied.

### (C) Failure of Counsel to Lay a Foundation for Impeachment of Complainant.

One of defense counsel's main witnesses was Rhonda Erskine, a long-time acquaintance

of everyone in the household that summer.  Erskine claimed that Tucker told her in late 1999

that the criminal sexual conduct allegation was a lie the two girls created to get Petitioner in trouble.[2]  (TT Vol. III, pp. 378-79) Petitioner's trial counsel intended to use Erskine's testimony to impeach Tucker and Goff, but before Erskine was able to testify about Tucker, the prosecution objected to the testimony as hearsay.  (TT Vol. III, p. 379-81)  Petitioner's trial counsel claimed the testimony fell into an exception of the hearsay rule: impeachment by prior inconsistent statement.  (TT Vol. III, p. 378)  However, the prosecution observed that counsel failed to ask Goff and Tucker about Erskine or any statement Tucker may have made to her.  (TT Vol. III, p. 380)  As a result, the court found counsel failed to lay the foundation for impeachment by a prior inconsistent statement and did not allow Erskine's proposed testimony.  (TT Vol. III p. 381)  She was only allowed to convey her general opinion of Tucker's honesty.  She stated she did not believe Tucker was "being honest with this whole thing."  (TT Vol. III p. 382)

On direct appeal, Petitioner contended trial counsel's error was a "serious tactical mistake [that] affected the outcome of [his] trial," constituting constitutionally ineffective assistance.  <u>Petition for Writ of Habeas Corpus</u>, p. 45.  The Court of Appeals rejected the claim stating the following:

> [D]efendant maintains he was denied the effective assistance of counsel by defense counsel's failure to lay a proper foundation for the admission of a prior inconsistent statement by one of the complainants through the testimony of another witness.  Defendant acknowledges that prior inconsistent statements are admissible when offered for impeachment but not to prove the truth of the prior statements.  See *People v. Hallaway,* 389 Mich. 265; 205

---

[2] This court only has petitioner's trial counsel's representation of what Erskine would testify to if permitted.  There was no finding of fact on this issue, but because Respondent does not argue she would have testified differently, this court accepts trial counsel's representation as true.

> N.W.2d 451 (1973).  Thus, even if the evidence were admitted, it would have been for the sole purpose of attacking the credibility of the complainant.  The credibility of the complainant was attacked when the same witness was allowed to express her opinion about the complainant's truthfulness.  Further, even absent the testimony of this complainant, overwhelming evidence was presented to support defendant's convictions.  Under these circumstances, we cannot conclude that defendant's trial was rendered unreliable by his counsel's performance.

People v. Lang, 2002 WL 31297609 at *1.  Petitioner reasserts his claim of ineffective counsel here and claims that the Court of Appeals' ruling meets the test under AEDPA for granting habeas relief.  This court finds Petitioner's argument lacks merit.

     The Sixth Amendment guarantees criminal defendants the right to assistance of counsel. U.S. Const. Amend. VI.  McMann v. Richardson established that "the right to counsel is the right to effective assistance of counsel[.]"  397 U.S. 759, 771, n. 14, 90 S.Ct. 1441 (1970).  Ineffective assistance occurs when "counsel's performance was deficient" and "the deficient performance prejudiced the defense."  Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052 (1987).  For counsel's performance to be deficient counsel must have committed errors so serious as to deprive the defendant of a fair trial.  Id. at 687, 104 S.Ct. 2052.  Such a performance falls below an objective standard of reasonable assistance.  Id. at 688, 104 S.Ct. 2052 ("The proper measure of attorney performance [is] reasonableness under prevailing professional norms.").  Reasonableness is evaluated under all the circumstances, but there are no checklists or specific guidelines to evaluate counsel's performance.  Id. at 688-89, 104 S.Ct. 2052.  Furthermore, scrutiny of counsel's assistance "must be highly deferential" and the defendant must overcome

-14-

the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance". Id. at 689, 104 S.Ct. 2052.

Even if counsel acted outside the range of reasonable performance, the performance must result in a prejudicial error to be ruled ineffective. Strickland, 466 U.S. at 693, 104 S.Ct. 2052. This is more than simply showing counsel's errors were conceivably outcome-determinative, but less than showing the errors would more likely than not change the outcome. Id. According to the court in Strickland, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" considering "the totality of the evidence before the judge or jury." Id. at 694-95, 104 S.Ct. 2052. For example, "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." Id. at 696, 104 S.Ct. 2052.

In evaluating Petitioner's claim of ineffective assistance of counsel, the state Court of Appeals applied the two-prong Strickland test. The Court of Appeals concluded that the performance of defense counsel did not prejudice the defense. It did not reach the issue of whether defense counsel performed deficiently.

It could be argued that Petitioner's trial counsel committed error in failing to lay the foundation for impeachment of one of the prosecution's key witnesses. Defense counsel explained that she thought she did not have to lay a foundation because "both [Goff and Tucker] have lied about – my allegation is that they have lied about instances on stand. Specifically, that the sexual assault took place." (TT Vol. III, p. 378) However, as the trial court correctly ruled,

-15-

this is not the correct method to lay foundation.  The proposed testimony of Erskine would, without foundation, constitute inadmissible hearsay.

However, even if this failure to lay proper foundation for impeachment rendered counsel's performance deficient overall, the testimony at issue cannot be said to be so significant as to result in prejudice.  Erskine's testimony, if believed, may have led to the impeachment of the credibility of Goff and Tucker.  The theory Petitioner offered of the case was that Goff and Tucker lied about the incident and this theory rested upon impeaching Goff, Tucker, and Boyd. Yet Boyd, an adult and not an age-mate of the victim, testified that he saw the victim jump up from the chair and run out of the room consistent with her explanation of the crime, and also testified to petitioner's later admission to him of the events forming the basis of the criminal sexual conduct charge.  This would not have been affected by the hearsay statements of Erskine.

Consistent with the decision of the Court of Appeals of Michigan, this court finds that the performance did not prejudiced the defense of the criminal sexual conduct charge. The Court of Appeals found that Erskine's proposed testimony would be superfluous because Erskine was allowed to state her opinion of Tucker's honesty.  The Court of Appeals also found "overwhelming evidence" to support the jury's guilty verdict.  Although there was no physical evidence presented to support the claim, Boyd testified that Petitioner said he penetrated Goff, and  Boyd witnessed the actions of the victim at the time.  (TT Vol. II, p. 323)  Therefore, the court finds that the Court of Appeals of Michigan reasonably applied the Supreme Court's clearly established law in <u>Strickland</u> by concluding counsel's error did not prejudice the reliability of the sexual misconduct verdict.

-16-

## V. Conclusion

For the reasons stated herein, the court recommends that Petitioner's request for a writ of habeas corpus be DENIED.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

S/VIRGINIA M. MORGAN_____
VIRGINIA M. MORGAN
UNITED STATES MAGISTRATE JUDGE

Dated:  August 29, 2006

**PROOF OF SERVICE**

The undersigned certifies that the foregoing Report and Recommendation was served upon counsel of record via the Court's ECF System and/or U. S. Mail on August 29, 2006.

s/Kendra Byrd
Case Manager to
Magistrate Judge Virginia M. Morgan